

# In the
# Court of Appeals
# Sixth Appellate District of Texas at Texarkana

_____

No. 06-26-00010-CV
_____

GABRIEL SANCHEZ, Appellant

V.

OFFICER WREN, MAYOR L. KELLY JONES, AND CITY OF WESTWORTH VILLAGE,
Appellees

On Appeal from the 17th District Court
Tarrant County, Texas
Trial Court No. 17-365033-25

Before Stevens, C.J., van Cleef and Rambin, JJ.
Memorandum Opinion by Justice Rambin

MEMORANDUM OPINION

The trial court dismissed Gabriel Sanchez's claims seeking relief that included an injunction, a declaratory judgment, and damages against Appellees, Officer Wren, Mayor L. Kelly Jones, and the City of Westworth Village (City Defendants) arising from a routine traffic stop.[1] Wren stopped Sanchez for running a stop sign and issued a citation. Sanchez sued Wren individually and in his official capacity, Jones individually and in his official capacity, and the City. The trial court held a hearing on the City's plea to the jurisdiction, motion under Section 101.106 of the Texas Civil Practice and Remedies Code, and motion under Rule 91a of the Texas Rules of Civil Procedure, and granted the motions and dismissed Sanchez's claims against these defendants with prejudice. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 101.106; TEX. R. CIV. P. 91a.

On appeal, Sanchez argues that the trial court erred by (1) conducting a combined hearing and entering a single dismissal order, (2) dismissing with prejudice, and (3) denying his motion to amend.

We affirm the trial court's judgment.

## I.  Applicable Facts

On May 30, 2023, Wren, a police officer with the Westworth Village Police Department (WVPD), stopped Sanchez for running a stop sign and issued Sanchez a citation. By July 18,

---

[1]This appeal was transferred to this Court from the Second Court of Appeals pursuant to a Texas Supreme Court docket equalization order. *See* TEX. GOV'T CODE ANN. § 73.001 (Supp.). Accordingly, we apply the precedent of the Second Court of Appeals in deciding this case. *See* TEX. R. APP. P. 41.3.

2

2023, the date of the trial on the citation, Wren had voluntarily left the WVPD. Wren did not appear at trial, and the State dropped the citation charge against Sanchez.

On May 29, 2025, Sanchez filed suit against Wren, Jones, and the City for malicious prosecution, false imprisonment, and emotional distress arising from the traffic stop and the "nightly panic attacks, insomnia, and persistent fear of wrongful arrest." Sanchez sought relief that included an injunction, a declaratory judgment, and damages against the City Defendants.[2] The City Defendants filed a motion that included a plea to the jurisdiction and motion to dismiss under Section 101.106 and Rule 91a.

In addition to suing the City Defendants, Sanchez had also sued Tarrant County, the Tarrant County Judge, and the Tarrant County District Attorney (County Defendants). Further, Sanchez sued the State of Texas and the Texas Attorney General (State Defendants).

On July 21, 2025, the trial court heard, and granted, the County Defendants' motion to dismiss.

On August 11, 2025, the trial court heard, and granted, the City Defendants' motion to dismiss. The City Defendants argued that that (1) probable cause for the traffic stop defeated Sanchez's claims; (2) the individual defendants were entitled to dismissal under Section 101.106; (3) the City retained governmental immunity because no waiver under the Texas Tort Claims Act had been pleaded; (4) no injunction could issue to bar criminal enforcement; (5) the request for declaratory relief was improper; and (6) limitations and the absence of diligent service barred the

---

[2]Sanchez's original and first amended petitions did not include the first name of Officer Wren. As the case progressed, the City Defendants submitted a declaration from an officer with the last name of Wren who attested to being the officer involved in the traffic stop at issue.

3

suit.  The City Defendants offered dash-camera and body-camera footage.  The trial court asked whether there was any objection to the exhibit, and Sanchez responded, "No, your Honor."  The trial court admitted the video footage.  The trial court announced from the bench that it was ruling for the City Defendants and signed a written order dismissing Sanchez's claims against the City Defendants the same day.

As of August 11, the trial court's order regarding the City Defendants was interlocutory because Sanchez's claims against the State Defendants had yet to be ruled on by the trial court.

On September 18, 2025, Sanchez nonsuited his claims against the State Defendants.  On September 19, 2025, the trial court entered an order dismissing the State Defendants.

On September 23, 2025, Sanchez filed a motion to reconsider or modify the interlocutory dismissal, alternatively for leave to amend or to sever.  On September 24, 2025, he filed a separate motion for leave to file a second amended petition.

On November 3, 2025, the trial court held a hearing on Sanchez's motions.  The trial court concluded that it lacked plenary jurisdiction and signed an order to that effect.

On December 16, 2025, Sanchez filed a notice of appeal.

## II.     Preliminary Issues

The City Defendants assert that Sanchez is a vexatious litigant.  They also come close to asserting that Sanchez's appeal is untimely.  While they provide a list of prior litigation involving Sanchez, they do not assert that he has formally been found to be a vexatious litigant. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 11.051, § 11.101 (Supp.).  That argument, therefore, is unavailing, and we proceed to examine Sanchez's appeal.

4

Regarding timeliness of the appeal, what we review here is the trial court's judgment, not the trial court's ruling on Sanchez's motions after the judgment became final. *Rusk State Hosp. v. Black*, 392 S.W.3d 88, 92 (Tex. 2012) ("Generally, Texas appellate courts have jurisdiction only over final judgments."); *Szabuniewicz v. King Invs., Inc.*, No. 02-23-00239-CV, 2023 WL 5967889, at *2 (Tex. App.—Fort Worth Sept. 14, 2023, pet. denied) (per curiam) (mem. op.) (collecting cases). Sanchez's nonsuit of the State Defendants was immediately effective when filed, but we use the trial court's order dismissing the State Defendants (the following day) as the date from which we calculate the deadline for Sanchez to appeal. *See Paskauskiene v. Tex. Dep't of Motor Vehicles*, No. 02-24-00516-CV, 2025 WL 2370578, at *2 (Tex. App.—Fort Worth Aug. 14, 2025, pet. denied) (mem. op.) (citing *Univ. of Tex. Med. Branch at Galveston v. Est. of Blackmon ex rel. Shultz*, 195 S.W.3d 98, 100 (Tex. 2006) (per curiam)).

As set forth above, the sequence is as follows:

- July 21, 2025:       The trial court dismissed the County Defendants;

- August 11, 2025:     The trial court dismissed the City Defendants; and

- September 19, 2025:  The trial court dismissed the State Defendants.

Given that sequence, the trial court's order formally dismissing the State Defendants was the last in a series of orders that "dispose[d] of all then-pending claims and parties." *In re C.K.M.*, 709 S.W.3d 613, 617 (Tex. 2025) (per curiam). Consequently, the trial court's August 11, 2025, order regarding the City Defendants was interlocutory when it was made, but became, on September 19, 2025, the trial court's final judgment regarding the City Defendants. *See id.* Accordingly, Sanchez's post-trial motions asking the trial court to revisit the final

judgment regarding the City Defendants served to extend his appellate deadline. *See* TEX. R. APP. P. 26.1.

## III. No Error Requiring Reversal of the Trial Court's Judgment

In his first issue, Sanchez argues that "[t]he trial court combined different procedural tracks, allowed evidence to come in during a hearing that included Rule 91a, and then entered one dismissal order without separating what standard governed what ruling."

### A. Standard of Review

"The trial court's ruling on a plea to the jurisdiction is a question of law we review de novo." *Herrera v. Mata*, 702 S.W.3d 538, 541 (Tex. 2024) (per curiam); *see City of Houston v. Gomez*, 716 S.W.3d 161, 164 (Tex. 2025) (per curiam) ("We review the denial of a plea to the jurisdiction de novo."). "We review the merits of a Rule 91a motion *de novo* because the availability of a remedy under the facts alleged is a question of law and the rule's factual-plausibility standard is akin to a legal-sufficiency review." *City of Dallas v. Sanchez*, 494 S.W.3d 722, 724 (Tex. 2016) (per curiam). "The admission and exclusion of evidence is committed to the trial court's sound discretion." *City of Brownsville v. Alvarado*, 897 S.W.2d 750, 753 (Tex. 1995). "A trial court abuses its discretion when it acts without regard for any guiding rules or principles." *Id.* at 754 (citing *Downer v. Aquamarine Operators, Inc.*, 701 S.W.2d 238, 241–42 (Tex. 1985)).

### B. Analysis

By his first issue, Sanchez does not directly challenge the substance of the trial court's judgment. Instead, Sanchez asserts procedural error regarding the trial court's combined hearing

and single dismissal order.  Sanchez asserts that "the proper remedy is reversal and remand so the trial court can apply the correct separate standards to the correct procedural vehicles."

Sanchez does not provide any authority that prohibits a trial court from issuing a single dismissal order when it conducted a hearing on more than one motion.  Specifically, Sanchez provides no authority that would prohibit a trial court from conducting a combined hearing on a plea to the jurisdiction, a motion to dismiss under Section 101.106, and a motion to dismiss under Rule 91a.  Such motions are often filed and heard contemporaneously.  *See, e.g.*, *Chambers-Liberty Cntys. Navigation Dist. v. State*, 575 S.W.3d 339, 343 (Tex. 2019) ("The District and the Commissioners filed a plea to the jurisdiction and a motion to dismiss under [Rule] 91a, asserting that the District's immunity from suit bars the State's claims.  The trial court denied the plea and the motion."); *In re Oncor Elec. Delivery Co.*, 716 S.W.3d 525, 530 (Tex. 2025) (orig. proceeding) ("ERCOT filed a plea to the jurisdiction based on governmental immunity, and all the defendants moved for dismissal under Rule 91a . . . . The trial court dismissed the claims against the retail electric providers, the gas producers, and ERCOT." (citation omitted)).

Again, though, what we review here is the trial court's judgment.  *See Szabuniewicz*, 2023 WL 5967889, at *2.  So, we look to whether Sanchez presents any argument that would impact the trial court's judgment.  *See id.*

An appellate "brief must contain a clear and concise argument for the contentions made, [supported by] appropriate citations to authorities and to the record."  TEX. R. APP. P. 38.1(i).  "We have said that '[t]here cannot be two sets of procedural rules, one for litigants with counsel

7

and the other for litigants representing themselves.'" *Goldstein v. Sabatino*, 690 S.W.3d 287, 295 (Tex. 2024) (alteration in original) (quoting *Mansfield State Bank v. Cohn*, 573 S.W.2d 181, 184–85 (Tex. 1978)). "Still, courts should 'review and evaluate pro se pleadings with liberality and patience.'" *Id.* (quoting *Li v. Pemberton Park Cmty. Ass'n*, 631 S.W.3d 701, 706 (Tex. 2021) (per curiam)). With those principles in mind, we approach Sanchez's brief with patience and treat with liberality arguments that could be considered an attack on the trial court's judgment. We do not find briefing waiver, but our patience and liberality stop before it gets to the point of making up arguments for Sanchez and thereby giving him "an unfair advantage over litigants represented by counsel." *See Mansfield State Bank*, 573 S.W.2d at 185.

Sanchez's procedural complaint about a combined hearing and order does not justify reversal of the trial court's judgment. Sanchez's brief stops at pointing out what he contends is a procedural flaw in the way the trial court heard and decided things. He does not provide authority that the alleged procedural flaw, in and of itself, requires reversal. Nor does Sanchez explain how the alleged procedural flaw caused substantive error in the trial court's judgment. Rather, Sanchez asserts that "the proper remedy is reversal and remand so the trial court can apply the correct separate standards to the correct procedural vehicles." Which is to say that he seeks separate hearings and orders for their own sake, without explaining how that would change the outcome. In that, we see no basis to reverse the trial court's judgment.

Sanchez argues that the trial court improperly admitted evidence when a Rule 91a motion requires determination on the pleadings only. But when the evidence was offered, and the trial court asked whether there was any objection, Sanchez answered, "No, your Honor." To preserve

8

"a complaint for appellate review, the record must show that . . . the complaint was made to the trial court by a timely request, objection, or motion" stating the grounds for the ruling sought, and that the trial court ruled or refused to rule. TEX. R. APP. P. 33.1(a). A party who affirmatively states that he has "no objection" to the admission of evidence waives any complaint about its admission. *In re Commitment of Hill*, 334 S.W.3d 226, 229 (Tex. 2011) (per curiam) (citing TEX. R. APP. P. 33.1) ("A party preserves error by a timely request that makes clear—by words or context—the grounds for the request and by obtaining a ruling on that request, whether express or implicit."). Because Sanchez affirmatively stated that he had no objection, Sanchez waived any complaint about the admission of the video footage. *See id.*

A matter Sanchez raises in a later issue bears mentioning here. Sanchez asserts that the trial court's judgment erred by not granting his motion for leave to amend. Sanchez, however, does not assert that a new amendment would have contained new and curative factual allegations.[3] Instead, Sanchez argues that his motion for leave to amend sought to add claims against Wren under 42 U.S.C. Section 1983. *See* 42 U.S.C. § 1983. But that motion for leave to amend was filed after the trial court's judgment became final. We therefore address that motion for leave in the next issue, which takes into account the timing of the proposed amended petition.

We overrule Sanchez's first issue.

---

[3]*See Tex. Dep't of Parks & Wildlife v. Miranda*, 133 S.W.3d 217, 226–27 (Tex. 2004) ("If the pleadings do not contain sufficient facts to affirmatively demonstrate the trial court's jurisdiction but do not affirmatively demonstrate incurable defects in jurisdiction, the issue is one of pleading sufficiency and the plaintiffs should be afforded the opportunity to amend.").

**IV.     No Error to Deny Amendment and to Dismiss with Prejudice**

Sanchez's second and third issues turn on the trial court's denials of his September 23 and 24, 2025 motions (September Motions).

**A.     Standard of Review**

Sanchez provides no standard of review for these issues.  The City Defendants contend that the trial court had no jurisdiction to hear the September Motions, or alternatively, that the trial court's ruling should be reviewed for abuse of discretion under the standard applied to trial amendments.[4]  For reasons set out above, the September Motions were filed while the trial court had jurisdiction to hear post-trial motions, but a motion to reconsider is not a separately appealable order.  This narrows the dispute to Sanchez's motion for leave to amend.  We therefore apply the standard of review applicable to trial court rulings on motions brought under Rule 63 of the Texas Rules of Civil Procedure:

> Parties may amend their pleadings, respond to pleadings on file of other parties, file suggestions of death and make representative parties, and file such other pleas as they may desire by filing such pleas with the clerk at such time as not to operate as a surprise to the opposite party; provided, that any pleadings, responses or pleas offered for filing within seven days of the date of trial *or thereafter*, or after such time as may be ordered by the judge under Rule 166 [of the Texas Rules of Civil Procedure], shall be filed only after leave of the judge is obtained, which leave shall be granted by the judge unless there is a showing that such filing will operate as a surprise to the opposite party.

TEX. R. CIV. P. 63 (emphasis added).

"On appeal, the trial court's ruling will not be disturbed unless the complaining party clearly shows an abuse of discretion."  *Hardin v. Hardin*, 597 S.W.2d 347, 349–50 (Tex. 1980)

---

[4]In the further alternative, the City Defendants set forth as another possible standard of review, the standard applicable to requests for new trials based on new evidence.  We need not address this further alternative as Sanchez does not seek post-trial relief based on new evidence.

10

(citing *Victory v. State*, 158 S.W.2d 760 (Tex. 1942)). "The filing of a trial amendment is within the sound discretion of the trial court and unless the trial court clearly abuses that discretion no reversible error is shown." *Victory*, 158 S.W.2d at 763. The *Victory* rule has continuing vitality. *See Denbury Green Pipeline-Tex., LLC v. Tex. Rice Land Partners, Ltd.*, 510 S.W.3d 909, 918 n.7 (Tex. 2017) (citing *Victory*, 158 S.W.2d at 763).

**B.      Analysis**

As noted above, Sanchez's proposed amended petition sought to add new claims against Wren under 42 U.S.C. Section 1983. We are aware that the trial court denied Sanchez's motion for leave to amend on the mistaken belief that it lacked jurisdiction to hear his motion. We are also aware that, in the mandamus context, the Texas Supreme Court has held that "an error of law or an erroneous application of law to facts is always an abuse of discretion." *In re Facebook, Inc.*, 625 S.W.3d 80, 86 (Tex. 2021) (orig. proceeding) (citing *In re Geomet Recycling LLC*, 578 S.W.3d 82, 91–92 (Tex. 2019) (orig. proceeding)). But in the trial- or post-trial-amendment context, the appellate burden is on the complaining party: "When amendments which introduce new substantive matter have been refused by the trial court under Rule 63, the burden of showing an abuse of discretion is on the complaining party, rather than on the opposite party to show surprise." *Hardin*, 597 S.W.2d at 349. There is a longstanding strain in the trial-amendment context where reviewing courts look, not just for legal error by the trial court, but to whether the rejected amendment would have changed the judgment on appeal.[5] Consistent with

---

[5]"It is harmless if the denial would not have affected the judgment rendered." *Haskell v. Border City Bank*, 649 S.W.2d 133, 135 (Tex. App.—El Paso 1983, no writ) (citing *Harberson v. Lawhon*, 518 S.W.2d 840 (Tex. App.—Fort Worth 1975, no writ)); *see Healey v. Healey*, 529 S.W.3d 124, 144 (Tex. App.—Tyler 2017, pet. denied)

11

such cases, the Texas Supreme Court has looked to whether the proposed amendment has evidentiary support that would change the result in the case. *See Crosstex N. Tex. Pipeline, L.P. v. Gardiner*, 505 S.W.3d 580, 617 (Tex. 2016).[6] As might be expected, appeals regarding trial and post-trial amendments are usually part of an appeal seeking to set aside a final judgment. *See id.*, at 590; *Hardin*, 597 S.W.2d at 349.

Thus, under *Hardin*, Sanchez bore the burden to show an abuse of discretion, and under *Crosstex* that burden involved more than just seeking leave to amend for amendment's sake; Sanchez's burden included showing how the proposed amendment would have entitled him to a different judgment.

Sanchez's brief does not set forth how, given the facts of the case, his proposed amendment would have brought about a judgment other than dismissal.

We overrule Sanchez's second and third issues.

## V.      Conclusion

We affirm the judgment of the trial court.


                                        Jeff Rambin
                                        Justice


Date Submitted:      July 7, 2026
Date Decided:        August 7, 2026

---

("Assuming without deciding that the trial court's refusal to allow the trial amendment was an abuse of discretion, we conclude that any error was harmless.").

[6]*See Gardiner*, 505 S.W.3d at 617 ("On the record as it currently exists in this case, we find no evidence that the compressor station was abnormally dangerous or that Crosstex engaged in the type of abnormally dangerous or ultrahazardous conduct that would support such a cause of action. We thus conclude that the trial court properly denied the Gardiners's request for a trial amendment to assert that claim.").

12